UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL LEE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   Case No. 3:21-cv-00900-GCS |
| SARA JO STOVER, and WEXFORD | ) |
| HEALTH SOURCES, INC., | ) |
| | ) |
|       Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Michael Lee, *pro se*, is an inmate currently in the custody of the Illinois Department of Corrections ("IDOC"). Although he is currently incarcerated at Menard Correctional Center, at all times relevant to his complaint, Plaintiff was incarcerated at Lawrence Correctional Center ("Lawrence"). (Doc. 55, p. 1). On August 9, 2021, Plaintiff brought this complaint pursuant to 42 U.S.C. § 1983 for claims arising from an incident which allegedly took place on July 12, 2021. In his complaint, Plaintiff brings two counts relating to medical treatment he allegedly received from Defendant Stover. First, Plaintiff states that Defendant Stover violated his Eighth Amendment rights when she removed a metal staple from Plaintiff's arm without conducting an x-ray to first determine precisely where in his arm the staple was located. (Doc. 55, p. 1). Second, Plaintiff brings a state law medical negligence claim arising from the same set of facts against both Defendant Stover and Wexford Health Sources, Inc. ("Wexford"). (Doc. 16).

Now before the Court is Defendant Stover's motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 54). For the reasons outlined below, the motion for summary judgment is **GRANTED.** As the Court no longer has subject-matter jurisdiction over the remaining state law negligence claim, that claim must be **DISMISSED.**[1]

## FACTUAL BACKGROUND

Plaintiff filed approximately thirty grievances during the relevant time period for this case. (Doc. 55, Exh. A). Of those grievances, five relate to Plaintiff's claims: Grievance # 06-21-213 (the June 21st grievance); Grievance # 06-21-354 (the June 28th grievance); Grievances # 07-21-132 and # 07-21-134 (the July 8th and July 12th grievances); Grievance # 07-21-100 (the July 9th Grievance); and Grievance # 07-21-230 (the July 20th grievance). (Doc. 55, p. 3-5). Because the July 12th grievance is a duplicate of the July 8th grievance, the Court will treat these grievances as a single grievance.

In his June 21st grievance, Plaintiff states that a nurse improperly discussed his medical information in the vicinity of other inmates, causing those inmates to laugh at Plaintiff. (Doc. 55, Exh. B, p. 19). Plaintiff's counselor responded to this grievance on June 24, 2021, and the grievance officer affirmed the denial of the grievance on its merits on July 23, 2021. *Id.* at p. 20. The Chief Administrative Officer concurred on July 27, 2021. *Id.* Plaintiff timely appealed this grievance to the Administrative Review Board ("ARB"),

---

[1] The statute governing removal to federal court and remand to state court only permits a federal court to remand suits which were initially removed to it. *See* 28 U.S.C. § 1447(a). As this case was initially filed in federal court, rather than removed from state court, dismissal, rather than remand, is appropriate.

and on August 9, 2021, the ARB denied the grievance on the merits. *Id.* at p. 22. Although the grievance describes a nurse, it does not name Defendant Stover, nor does it reference an x-ray for a staple in Plaintiff's arm.

On June 28, 2021, Plaintiff filed a grievance regarding a metal staple inside his forearm. (Doc. 55, Exh. C, p. 33-34). Plaintiff requested permission to see a doctor to have the staple removed. *Id.* at p. 33. The Chief Administrative Officer designated this grievance an emergency grievance on July 1, 2021. *Id.* However, on July 2, 2021, the Grievance Officer denied Plaintiff's grievance and encouraged him to instead submit a request to visit the Health Care Unit ("HCU") to seek treatment. *Id.* at p. 34. The Chief Administrative Officer concurred with this response on July 6, 2021. *Id.* However, there is no indication that Plaintiff appealed this grievance any further. *Id.*

Plaintiff's July 8th grievance complained that a nurse practitioner failed to take an x-ray before removing a foreign object from his arm. (Doc. 55, Exh. C, p. 19). Plaintiff filed a duplicate of this grievance on July 12, 2021. *Id.* at p. 29. Plaintiff's counselor responded to the grievance on July 15, 2021, noting that Plaintiff was treated by Defendant Stover. *Id.* at p. 23. On July 28, 2021, Plaintiff's grievance officer denied the grievance as moot because Plaintiff had been treated by a medical professional and referred to an out-of-facility medical provider. *Id.* The Chief Administrative Officer concurred on July 29, 2021. *Id.* There is no evidence in the record that Plaintiff appealed this decision to the ARB.

On July 9, 2021, Plaintiff grieved medical issues stemming from a foreign object in his arm. (Doc. 55, Exh. C, p. 24-26). The Chief Administrative Officer deemed this

grievance emergent on July 14, 2021. *Id*. at p. 25. However, the Grievance Officer recommended this grievance be deemed moot on July 20, 2021 because Plaintiff appeared to be receiving medical care for his concerns. *Id*. The CAO agreed with this assessment. *Id*. Though this grievance was returned to Plaintiff on July 23, 2021, Plaintiff did not appeal the grievance to the ARB. *Id*.

In his July 20th grievance, Plaintiff complained that he still felt like there was a foreign object in his right arm. (Doc. 55, Exh. C, p. 16). Plaintiff referenced the same nurse practitioner who initially saw him for his injury. *Id*. However, Plaintiff's counselor reported that the HCU stated that an x-ray would be completed for Plaintiff as soon as one was available. *Id*. Plaintiff's Grievance Officer affirmed the grievance, stating that, "if not already done so, the grievant is to have x-rays as ordered by" the nurse practitioner. *Id*. at p. 17. The CAO concurred on August 17, 2021, and the responses were returned to Plaintiff on August 19, 2021. *Id*. Plaintiff did not appeal the determination to the ARB.

Plaintiff continued to file grievances regarding this issue throughout 2021. *See* (Doc. 55, p. 6-9). However, Plaintiff filed each of these grievances after August 9, 2021, the date on which he filed suit. *Id*. Furthermore, Plaintiff did not appeal these grievances to the ARB. *Id*.

On April 13, 2022, the Court held a hearing on the motion for summary judgment. Defendant Stover called two witnesses in addition to Plaintiff: Mr. Travis Bayler and Mr. Mitchell Erwin. These witnesses confirmed that Plaintiff timely received his grievances with decisions from the Lawrence grievance office and that Plaintiff did not appeal these

grievances to the ARB. Plaintiff also confirmed that he understood the grievance process, but that he nevertheless did not appeal his grievances to the ARB during this timeframe.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence from which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine and resolve factual issues relating to the defense of the failure to exhaust administrative remedies. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The Prison Litigation Reform Act ("PLRA") governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the Illinois Department of Corrections ("IDOC"), Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. The grievance must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response to the grievance, then that prisoner

can submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also permits an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to

fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

Defendant Stover first argues that Plaintiff's June 21st grievance cannot support his claim for exhaustion because that grievance did not mention Defendant Stover's actions. (Doc. 55, p. 13). Although Plaintiff fully appealed this grievance, it nevertheless fails to exhaust his administrative remedies for this claim. Inmates must provide enough information "to serve a grievance's function of giving prison officials a fair opportunity to address an inmate's complaints." *Bandala-Martinez v. Bebout*, 188 F.Supp.3d 836, 842 (S.D. Ill. 2016)(citing *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)). Here, Plaintiff's case concerns the failure to x-ray his arm prior to removing a metal staple. However, his June 21st grievance refers to a nurse who loudly discussed his medical condition in front of other inmates, which is not related to the conduct at issue. (Doc. 55, Exh. B, p. 19). Therefore, it did not put the facility on notice that the Plaintiff was complaining about a failure to x-ray his arm. As such, this grievance cannot support finding that Plaintiff exhausted his administrative remedies, even though he fully appealed this grievance to the ARB.

Defendant Stover next points out that the June 28th and July 9th grievances cannot support Plaintiff's claim that he exhausted his administrative remedies because Plaintiff filed these grievances prior to the date on which the conduct underlying this complaint occurred. (Doc. 55, p. 13). In its merit review order, the Court construed Plaintiff's claims against Defendant Stover as involving her attempt to remove a metal staple from Plaintiff's arm on July 12, 2021. (Doc. 16, p. 3-4). Accordingly, the grievances filed on June 28th and July 9th cannot be grieving this conduct, as the conduct at issue had not yet occurred.

Lastly, Defendant Stover asserts that the July 12th grievance and the July 20th grievance cannot be considered fully exhausted because Plaintiff did not appeal the grievances to the ARB. (Doc. 55, p. 13). A grievance remains unexhausted unless an inmate completes the administrative process by following the established rules for that process. *See Pozo*, 286 F.3d at 1023. It is the final decision of the ARB which completes the exhaustion requirement. *See Bandala-Martinez*, 188 F.Supp.2d at 842. The Seventh Circuit requires strict adherence to this standard. *See Dole*, 438 F.3d at 809. Plaintiff does not contend that prison officials mishandled his grievances or failed to reply to them such that an appeal to the ARB was not possible, nor does the record indicate that this may be the case for Plaintiff. Accordingly, Plaintiff's July 12th and July 20th grievances remain unexhausted.

To the extent that Plaintiff argues that his later grievances are exhausted, this claim does not warrant finding in favor of Plaintiff regarding the Defendants' motion for

summary judgment. Because the purpose of the exhaustion requirement is to ensure that prison officials have the opportunity to investigate an inmate's claims prior to litigation, an inmate must use the administrative system *prior* to filing suit. *See Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999)(emphasis added). A suit filed before an inmate has exhausted his administrative remedies must be dismissed, as the court lacks the discretion to resolve the claim on its merits. *See Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)(citing, *inter alia*, *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998), overruled by *Jones v. Bock*, 549 U.S. 199 (2007)).[2] This is true even if the inmate is able to exhaust his administrative remedies after filing suit but before the entry of judgment. *Id*. An attempt to exhaust administrative remedies during litigation is therefore insufficient. *See Ford*, 362 F.3d at 398. As Plaintiff's grievances filed after August 9, 2021 were initiated after Plaintiff filed this suit, those grievances cannot support finding that Plaintiff exhausted his administrative remedies.

## Conclusion

For the above stated reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 54) is **GRANTED.** The Court directs the Clerk of the Court to dismiss this case without prejudice.

---

[2] The Supreme Court in *Jones* held that, despite the requirement that an inmate exhaust their administrative remedies prior to filing suit, that inmate was not required to provide evidence of exhaustion in their complaint because the burden to raise exhaustion of remedies as an affirmative defense lay with the defendant. 549 U.S. at 212. However, there remains "no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id*. at 211 (internal citations omitted).

**IT IS SO ORDERED.**

**DATED: May 13, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.05.13 12:04:02 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**